UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

ALAN H. REISNER
  & ELISA K. REISNER,

                        Debtors.

MARC A. PERGAMENT,
Chapter 7 Trustee of the Estate
of Alan H. Reisner and
Elisa K. Reisner,

                      Plaintiff,

vs.

MURIEL C. REISNER,

                    Defendant.

Chapter 7

Case No. 804-81635-511

Adv. No. 805-8004-511

## DEFENDANT'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

SCAROLA ELLIS LLP
*Attorneys for Defendant*
  Mark G. Peters (MP-9735)
  C. Michael Carlson
888 Seventh Avenue
45th Floor
New York, NY 10106
(212) 757-0007

LEWIS W. SIEGEL
444 Madison Avenue
27th Floor
New York, NY 10022
(212) 481-1300

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

Statement of Facts ........................................................................................ 2

A.    The Background of this Adversary Proceeding:  Muriel's Loan to
      Debtor to Enable Him to Purchase the Property at Issue and Debtor's
      Embezzlement from Muriel.  ...................................................................... 3

B.    The Transfer of the Jupiter Property from Debtor to Muriel.  .......................... 4

C.    The Adversary Proceeding.  ...................................................................... 6

Argument ...................................................................................................... 7

POINT I:   THE CLAIMS BASED ON "ACTUAL INTENT TO DEFRAUD" SHOULD
           BE DISMISSED BECAUSE THERE IS NO EVIDENCE OF SUCH INTENT
           AND THE EVIDENCE SHOWS EXACTLY THE OPPOSITE .............................. 8

POINT II:  BECAUSE DEBTOR RECEIVED REASONABLY EQUVALENT VALUE
           FOR THE PROPERTY HE TRANSFERRED, THERE IS NO CONSTRUCTIVE
           FRAUD AND THE TRANSFER CANNOT BE AVOIDED ON THAT BASIS ........... 9

A.    The Mortgages on the Property Exceeded the Property's Value and
      Therefore Debtor Received Reasonably Equivalent Value in
      Surrendering the Property to Satisfy the First Mortgage ................................ 10

B.    The Property Was Transferred Not Only to Satisfy the Mortgage But
      Also to Begin Repaying the Money Debtor Embezzled.  Collectively
      Those Debts Far Exceeded the Property's Value. .......................................... 14

Conclusion .................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*BFP v. Resolution Trust Corp.,*
511 U.S. 531, 114 S.Ct. 1757 (1994) ........................................................ 12

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548 (1986) .......................................................... 7

*Durrett v. Washington Nat. Ins. Co.,*
621 F.2d 201 (5th Cir. 1980) .................................................................... 12

*Estate of Spruill v. Commissioner,*
1987 WL 49324 (Tax Ct. 1987) ............................................................... 11

*In re Ames Department Stores, Inc.,*
161 B.R. 87 (Bkrtcy. S.D.N.Y. 1993) ........................................................ 8

*In re Bennett Funding Group, Inc.,*
232 B.R. 565 (Bkrtcy. N.D.N.Y. 1999) ..................................................... 10

*In re Blaine Richards & Co., Inc.,*
10 B.R. 424 (Bkrtcy. E.D.N.Y. 1981) ....................................................... 13

*In re Chase,*
328 B.R. 675 (Bkrtcy. D. Vt. 2005) .......................................................... 11

*In re Ear, Nose and Throat Surgeons of Worcester, Inc.,*
49 B.R. 316 (Bkrtcy. D. Mass. 1985) ......................................................... 8

*In re Jones,*
209 B.R. 380 (Bkrtcy. E.D. Va. 1997) ...................................................... 11

*In re Kaiser,*
722 F.2d 1574 (2d Cir. 1983) ................................................................... 9

*In re Littleton,*
888 F.2d 90 (11th Cir. 1989) ................................................................... 12

*In re Moore,*
177 B.R. 437 (Bkrtcy. N.D.N.Y. 1994) ...................................................... 8

*In re Morris Communications, Inc.,*
914 F.2d 458 (4th Cir. 1988) ................................................................... 13

*In re Rubin Bros. Footwear, Inc.,*
  119 B.R. 416 (S.D.N.Y. 1990) ................................................................................. 8

*In re Venice-Oxford Associates Ltd.,*
  236 B.R. 820 (Bkrtcy. M.D. Fla. 1999) ................................................................. 8

*Kulak v. City of New York,*
  88 F.3d 63 (2d Cir. 1996) ...................................................................................... 7

*Rubin v. Manufacturers Hanover Trust Co.,*
  661 F.2d 979 (2d Cir. 1981) ................................................................................. 10

## Statutes

11 U.S.C. §548(a) ..................................................................................... 1, 10

Fed. R. Civ. P. 56(c) ...................................................................................... 7

Florida Statute FLA § 726.1051(a) ................................................................. 8

Florida Statute FLA § 726.108 ...................................................................... 7

New York Debtor and Creditor Law § 276 ................................................. 7, 8

New York Debtor and Creditor Law § 278 .................................................... 7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

ALAN H. REISNER
  & ELISA K. REISNER,

                    Debtors.

MARC A. PERGAMENT,
Chapter 7 Trustee of the Estate
of Alan H. Reisner and
Elisa K. Reisner,

                    Plaintiff,

vs.

MURIEL C. REISNER,

                    Defendant.

Chapter 7

Case No. 804-81635-511

Adv. No. 805-8004-511

DEFENDANT'S MEMORANDUM IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT

Defendant Muriel Reisner ("Muriel") submits this memorandum in

support of her motion for summary judgment dismissing this adversary proceeding.

The Trustee is wrongfully attempting to avoid the transfer of certain property from the

debtor (hereafter, "Debtor" or "Alan") to Muriel as fraudulent pursuant to 11 U.S.C. §

548(a). However, the undisputed facts demonstrate that the transfer was an arms-

length transaction for fair value in which there was no attempt to defraud the Debtor's

creditors or otherwise improperly remove assets from that estate. There is no

allegation that Muriel is an insider. For these reasons, the complaint should be

dismissed.

*Statement of Facts*

In April 1995, Debtor borrowed $300,000 from Muriel to buy certain property in Jupiter, Florida (the "Jupiter Property"). Debtor never made any payments on the mortgage (the "First Mortgage") given to Muriel to secure repayment of that $300,000 loan. Affidavit of George Ord, sworn to April 7, 2006 ("Ord Aff."), ¶ 2. Thereafter, and over the course of several years, the Debtor, while serving as 90-year old Muriel's accountant, embezzled more than $1.5 million from her. Deposition of Debtor Alan Reisner, dated November 4, 2005 ("Alan Reisner Dep.") at 32-33, 37.[1] *See also* Peters Aff., Exs. B & C. As a result of the embezzlement, Muriel is the largest creditor of Debtor's bankruptcy estate, holding approximately two-thirds of the unsecured claims. Peters Aff., Ex. D.

After the embezzlement came to light, Muriel sued the Debtor, seeking both foreclosure on the Jupiter Property and the return of the embezzled funds. Ord Aff., ¶ 3. To satisfy the First Mortgage obligation and to make partial amends — if possible — for the embezzlement, Debtor transferred the Jupiter Property to Muriel. Ord Aff., ¶ 4. It is this transfer that the Trustee seeks to avoid, as a fraudulent conveyance in this action. At the time of the transfer, the mortgages on the Jupiter Property exceeded its value, so that Muriel did not receive a windfall in the transaction — she received property with no equity in it. Ord Aff., ¶ 5. Moreover, even if the value of the Jupiter Property was more than the mortgages, any excess would have been vastly outweighed by Debtor's remaining embezzlement debt to Muriel. Ord Aff., ¶ 5.

---

[1]    A copy of relevant portions of the Alan Reisner Dep. is attached as Exhibit A to the Affidavit of Mark G. Peters, sworn to April 6, 2006 ("Peters Aff.").

The transaction was entirely arms-length, handled not by Muriel but by her lawyers. Alan Reisner Dep. at 25-28, 42, 47; Ord. Aff., ¶ 5. Debtor agreed to the transfer because he owed Muriel money, both on the First Mortgage on the Jupiter Property and for his embezzlements, and this was a way of partially settling such debts. Alan Reisner Dep. at 27, 49. There was no intent, by any party, to improperly remove assets from Debtor's estate or otherwise defraud other creditors. Alan Reisner Dep. at 50; Ord Aff., ¶ 5.

A.    The Background of this Adversary Proceeding:  Muriel's Loan
      To Debtor to Enable Him to Purchase The Property At Issue and Debtor's
      Embezzlement From Muriel.

In April 1995, Muriel loaned the Debtor $300,000 so that he could purchase the Jupiter Property for $428,295. In return, the Debtor gave Muriel a first mortgage of $300,000 which was properly recorded in May 1995. Ord Aff., ¶ 2. Debtor never made any payments on that mortgage. Ord Aff., ¶ 3.

Debtor's embezzlement first came to light in January 2003, when Debtor, under pressure to account for certain funds, wrote Muriel a letter admitting to embezzling $755,000 from her, stating, in part:

> "Over the past few years I have relied on your account to help me with cash shortfalls without asking permission or telling you the truth. I completely violated your trust in me. I never intended to steal from you. I now know what 'rock-bottom' means when it comes to my addiction, gambling ... . The reason I did not send the statements for the citibank account right away was that I wanted to analyze them first. I knew it would show transfers of money and I was not going to deceive you any further by not producing the statements ... . I owe you as of 12/31/02 approximately $755,000 ... . Therefore, I am responsible for your 'losses' since 8/14/98. I most [sic] tell you that no one in my family

> knows about this and while I am in no position to ask
> favors, I do ask that you help me keep it from them."

Peters Aff., Ex. B; Alan Reisner Dep. at 37.

A subsequent review of Muriel's accounts that were under Debtor's control was conducted by a forensic accounting firm which found that Debtor had in fact stolen over $1,500,000. Peters Aff., Ex. C. Indeed, this Court has entered an order finding that $1,569,063 of Debtor's obligation to Muriel was non-dischargeable in this Bankruptcy case. Peters Aff., Ex. E.

B.    *The Transfer of the Jupiter Property*
      *From Debtor to Muriel.*

Because of the embezzlement, and because Debtor had not made any payments on the Jupiter Property mortgage, Muriel sued to foreclose on the Jupiter Property and to recover on the embezzlement. Ord Aff., ¶ 3. In September 2003, as partial settlement of the lawsuit, Debtor gave Muriel a quitclaim deed for the Jupiter Property.   Ord Aff., ¶ 4.

The transfer of the Jupiter Property to Muriel was an arms-length transaction, not an exchange among family members. Ord Aff., ¶ 6. Though they share the same last name, Debtor is not Muriel's son, rather, Debtor is only the son of Muriel's late second husband who died in 1989. Alan Reisner Dep. at 32.[2] Upon learning of Alan's embezzlement, Muriel retained lawyers to deal with the matter and negotiate with the Debtor. She did not, during the negotiations or after, deal directly with Debtor on the matter. Ord. Aff., ¶ 6; Alan Reisner Dep. at 25-28, 42, 47.

---

[2]    As such, she is not an "insider" under the bankruptcy code. Indeed, the Trustee has not sought to claim that she is.

4

There was no intent to defraud any of Debtor's other creditors. As Debtor clearly stated in his deposition:

> Q: Were you trying to defraud the other creditors in some fashion?
>
> A: No. At that point I wasn't even contemplating going into bankruptcy.

Alan Reisner Dep. at 50. Indeed, at the time of the transfer, Debtor was not even considering bankruptcy protection. Alan Reisner Dep. at 45, 51-52. Rather, this was an arms-length negotiation in which Debtor signed over the deed to partially settle obligations to a person to whom he owed debts far greater than the value of the property. Alan Reisner Dep. at 27, 40-41, 49. Debtor did not retain physical possession of the property after the transfer. Alan Reisner Dep. at 6.

The parties have stipulated that, at the time of the transfer, the Jupiter Property had a fair market value of $900,000. Peters Aff., Ex. F. When the transfer was recorded, there were three mortgages on the Jupiter Property:

(i)     the First Mortgage held by Muriel in the original principal amount of $300,000 plus accrued 8.5 years' interest (a total of $476,820.00, exclusive of collection costs and fees);

(ii)    the second mortgage to the Yetta Dorf Trust and the Saul Dorf Trust (collectively, the "Dorf Trust") from October 1998 in an original principal amount of $300,000; and

(iii)   the third mortgage (the "Kaplan Mortgage") to David and Leah Kaplan in an original principal amount of $239,773.55.

Ord Aff., ¶ 7. Alan Reisner testified that the second and third mortgages were owed $295,000 and $214,100 respectively at the time of transfer. Alan Reisner Dep. at

14, 27.[3] Thus, the three mortgages totaled at least $985,920, far more than the $900,000 stipulated value of the Jupiter Property at the time of the transfer.

The transfer of the Jupiter Property was subject to the Dorf Mortgage and the Kaplan Mortgage. When Muriel's lawyers negotiated the transfer with Debtor, one of the arguments made to debtor was that if there were any equity in the Jupiter Property over the Mortgages payable, the transfer would be a way to repay part of the embezzlement debt to Muriel. Ord Aff., ¶ 8. *See also* Alan Reisner Dep. at 40-41, 49.

## C.    *The Adversary Proceeding.*

On, March 16, 2004 — six months after the transfer — Debtor filed his Chapter 7 case. On January 5, 2005, the Trustee commenced this adversary proceeding, seeking to avoid the transfer of the Jupiter Property as a fraudulent conveyance. The Complaint's eleven claims (consisting mostly of duplicative claims asserting rights under three jurisdictions — Federal, New York and Florida) should be divided into three groups:

- claims (1, 3, 8 and 11) are based on an allegation that the transfer was based upon "actual intent to hinder, delay, or defraud" the Debtor's other creditors.

- claims (2, 3, 4, 8 and 9) are based on an allegation that Debtor did not obtain "reasonably equivalent value" in return for the deed to the Jupiter property.[4]

---

[3]    Defendant accepts Alan Reisner's statement for the purpose of this summary judgment motion only.

[4]    Claims 3 and 8 assert both bases for liability.

- claims (5, 7 and 10) are purely derivative, and merely state a right to recover in the event that liability on other claims is proven.[5]

None of these claims is viable because there is no evidence to support either of the two core allegations.  All of the evidence demonstrates that the transfer occurred without any fraudulent intent; similarly, the Jupiter Property had no value in excess of the mortgages, and certainly none greater than Debtor's other obligation to Muriel.  Thus neither the creditors nor the estate was disadvantaged by the transfer.

*Argument*

Summary judgment is mandated when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  The Second Circuit has made clear that, in opposing summary judgment, a party may not rely upon "conclusory statements, conjecture, or speculation."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

---

[5] Claim 5 is based on New York Debtor and Creditor Law § 278, which states that "where a conveyance ... is fraudulent" creditors may seek to have it set aside.  Claim 10 is based on a similar Florida statute (FLA § 726.108) which lists the type of relief available to a defrauded creditor.  Neither statute creates independent methods of finding a conveyance improper.  Finally, Claim 7 is based on New York Debtor and Creditor Law § 276-a, and seeks attorneys fees if the Trustee is successful in this action.  Because these three claims do not state independent causes of action, they need not be considered further on this motion.

POINT I

THE CLAIMS BASED ON "ACTUAL INTENT TO DEFRAUD" SHOULD BE
DISMISSED BECAUSE THERE IS NO EVIDENCE OF SUCH INTENT
AND THE EVIDENCE SHOWS EXACTLY THE OPPOSITE

Claims 1, 3, 8 and 11 of the Trustee's Complaint allege an "actual

intent to... defraud." This group of claims is based upon 11 USC § 548 (a)(1)(A) and

its state analogues.[6]   The courts have consistently held that to void a transfer under

this provision, the moving party must demonstrate "actual intent" to commit a fraud

on the part of the transferor — here the Debtor, Alan Reisner. *In re Rubin Bros.*

*Footwear, Inc.,* 119 B.R. 416, 423 (S.D.N.Y. 1990). As there is no evidence of such

intent — indeed the evidence is to the contrary — these claims must be dismissed.

The burden is on the Trustee to come forward with proof of intent. *In re*

*Moore,* 177 B.R. 437 442 (Bkrtcy. N.D.N.Y. 1994); *In re Ear, Nose and Throat*

*Surgeons of Worcester, Inc.*, 49 B.R. 316, 319 (Bkrtcy. D. Mass. 1985). The Trustee

cannot meet this burden in this action. While the complaint contains allegations (all

stated "upon information and belief") that Debtor acted with actual intent, there is no

evidence to support those allegations. Indeed, the evidence is to the contrary. As

noted above, the Debtor, when questioned at his deposition, flatly stated that there

was no intent to defraud; rather his intent was to eliminate his obligations on the

various mortgages and — if possible — to attempt some restitution on his significant

---

[6]      New York and Florida state law both have analogues to 11 U.S.C. §548 (a)(1)(A) and
several of this group of claims are based on these analogues rather than the federal statute. *See*
Claims 3 & 7 (based on New York State Debtor and Creditor Law § 276); Claims 8 & 11 (based
on FLA § 726.1051(a)). However, courts have consistently held that these state analogues have
the same standard of proof and requirements as the federal statute. *In re Venice-Oxford*
*Associates Ltd.,* 236 B.R. 820, 834 (Bkrtcy. M.D. Fla. 1999)(federal and Florida State statute have
same standards); *In re Ames Department Stores, Inc.,* 161 B.R. 87, 89 (Bkrtcy. S.D.N.Y. 1993)(no
need for separate analysis of claims under New York Statute as "elements are almost identical").
Accordingly, all of plaintiff's claims based upon actual intent are analyzed under the federal
statute.

debts to Muriel.  *See* Alan Reisner Dep. at 27, 40-41, 45, 49, 50-52.  The testimony

of Muriel's lawyer confirms this.  Ord. Aff. at ¶ 5, 8.  Indeed, the Debtor testified that,

at the time of the transfer, he was not even contemplating bankruptcy. *See* Alan

Reisner Dep. at 45, 51-52.

Nor can the Trustee prove intent indirectly through "badges of fraud."

*See, e.g., In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir. 1983)(allowing in some cases

proof of fraud through indirect indicia of such intent and setting forth examples of

such "badges of fraud.")  The Trustee has not alleged, nor is there any evidence in the

record to so suggest, that any of the traditional "badges" exist here:  the Debtor

received adequate consideration for the transfer; the transfer was an arms-length

transaction; the Debtor did not retain possession of the property after the transfer; the

Debtor's financial condition was not worsened by the transaction but rather several of

his most significant debts were lifted; there is no pattern of questionable transactions.

In sum, Debtor, in sworn testimony, denied any fraudulent intent.  His

explanation is consistent with all of the evidence.  As there is nothing to contradict this

evidence, the Trustee's claims based on actual intent must fail.

## POINT II

### BECAUSE DEBTOR RECEIVED REASONABLY EQUIVALENT VALUE FOR THE PROPERTY HE TRANSFERRED, THERE IS NO CONSTRUCTIVE FRAUD AND THE TRANSFER CANNOT BE AVOIDED ON THAT BASIS

The Trustee's alternate claims (2, 3, 4, 8 and 9) seek to avoid the

transfer on the theory of constructive fraud.  To succeed on such a claim, the Trustee

must show that Debtor did not receive reasonably equivalent value in return for the

Jupiter Property.  Because the uncontested evidence demonstrates that he received

more than such value, these claims too must fail. The total of the mortgages on the Jupiter Property were greater than the property's value, and thus the property transferred to Muriel had no equity in it. (Point A, below.) Further, as all parties to the transaction have testified, the Jupiter Property was given to Muriel not only to satisfy the First Mortgage, but also, if there was equity above all mortgages, to partially satisfy the debts to Muriel arising from Debtor's embezzlement. (Point B, below).

A.    *The Mortgages on the Property Exceeded
        the Property's Value and Therefore Debtor Received
        Reasonably Equivalent Value in Surrendering the Property to
        Satisfy the First Mortgage.*

        A transfer may only be avoided where a debtor receives "less than a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B).[7]  The courts have long held that "reasonably equivalent value" does not require "mathematical precision" or a "penny-for-penny exchange." *Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 994 (2d Cir. 1981). Rather, all that is required is that the exchange be "within a reasonable range." *In re Bennett Funding Group, Inc.,* 232 B.R. 565, 572 (Bkrtcy. N.D.N.Y. 1999).

        Here, the evidence shows that reasonably equivalent value was received. The parties have stipulated that the Jupiter Property had a value, at the time of transfer, of $900,000. Peters Aff., Ex. F. Debtor transferred the property to Muriel, in part, to satisfy a mortgage debt of $476,820.00 (the $300,000.00 First Mortgage plus accrued interest). However, at the time Debtor transferred the property, it was

---

[7]        Again, the analogous state claims are analyzed under the same standard. *See* note 5, above.

encumbered by, and Muriel took the property subject to, two other mortgages totaling over $509,100.00 (the $295,000.00 Dorf Trust Mortgage and the $214,100.00 due on the Kaplan Mortgage). Thus, Debtor was relieved of over $985,920.00 of debt by surrendering property worth $900,000.

The Trustee has taken the position that the second mortgage (the Dorf Trust Mortgage for $295,000) was invalid and therefore should not be considered in assessing the value of the transaction. As of the date of this motion, this second mortgage has not been invalidated and remains in force. Ord Aff., ¶ 7. To suggest that it cannot be considered in any way in calculating the value of the property is wrong. *Cf. Estate of Spruill v. Commissioner,* 1987 WL 49324 at n.42 (Tax Ct. 1987) (suggesting that where "cloud" exists on the title to property, proper course is to discount value accordingly). Even if this mortgage were discounted by half — to account for the potential that it may, in the future, be invalidated — that would leave the value of the three mortgages at $838,420, or 93% of the value of the property. This amount constitutes reasonably equivalent value. *See, e.g., In re Chase,* 328 B.R. 675, 683 (Bkrtcy. D. Vt. 2005)(90% is reasonably equivalent value); *In re Jones,* 209 B.R. 380, 386 (Bkrtcy. E.D. Va. 1997)(87% is reasonably equivalent); *In re Thompson,* 18 B.R. 67, 70 (Bkrtcy. E.D. Tenn. 1982)(80% is reasonably equivalent).

Even if the Court were to entirely discount the Dorf Trust Mortgage — in essence finding that a mortgage that remains valid as of this date, has, and had at the time of the transfer, absolutely no value — the other two mortgages (the First Mortgage to Muriel and the Kaplan Mortgage) total $690,920.00. As the Jupiter Property was worth $900,000, Debtor received roughly 77% of the property's value.

This too constitutes "reasonably equivalent value." *See, e.g., Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201, 204 (5th Cir. 1980)(noting that case law did not support a finding of reasonably equivalent value where a transfer was for less than 70% of market value).[8]

        Finally, the Trustee, presumably aware of the likelihood of the dismissal of this action, has now, as a delaying tactic in this action, brought an action to challenge the Kaplan Mortgage, claiming to seek to avoid it as an "insider" preferential transfer.[9] Peters Aff., ¶ 8. This subterfuge and delaying tactic must fail for two reasons: (i) on a factual basis, there is no support for the allegation that Kaplan is an insider; and (ii) even if there were a valid preference claim, it would not constitute a defense in this action.

        The "insider" claim as to Kaplan is specious because it is based solely on the Trustee's unsupported and unsupportable allegation that Debtor's clients, the Kaplans, were such intimate friends that they qualify as "insiders" under the bankruptcy Code. Peters Aff., ¶ 8. There is no evidence of this, and in fact, the evidence is to the contrary. Debtor, at his deposition, did not describe his relationship with the Kaplans as close, personal or intimate. Rather, when asked how he knows

---

[8]    *Durrett* arose at a time when courts inquired whether reasonably equivalent value had been obtained in mortgage foreclosure sales. The Supreme Court has since held that such inquiry is unnecessary. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 1765 (1994)(holding that the price obtained at a sale conducted in accordance with state procedures is conclusively for reasonably equivalent value). On that procedural issue, then, *Durrett* and its progeny have been abrogated; the *BFP* case, however, does not affect the *Durrett* court's reasoning on the concept of reasonably equivalent value. Further, some courts, including some within this district, have rejected *Durrett's* hard 70% cutoff. *See, e.g., In re Adwar*, 55 B.R. 111, 114-5 (Bkrtcy. E.D.N.Y. 1985). However, these courts have essentially suggested that flexibility is needed to account for different circumstances. *See, e.g., id.* at 114. Here the unique circumstance is the fact that another mortgage existed, and, while challenged now, was valid at the time and had to be considered by the parties in evaluating the transfer.

[9]    While the Kaplan Mortgage was recorded over 11 months before the bankruptcy filing, the loan itself was made years earlier.

the Kaplans, he stated that they were "clients" of his accounting practice and not did not ascribe any other or more intimate connection. *See* Alan Reisner Dep. at 22. Serving as someone's accountant does not create an insider relationship. *In re Blaine Richards & Co., Inc.*, 10 B.R. 424, 432 (Bkrtcy E.D.N.Y. 1981). The Trustee can provide no evidence to support his allegation that the Kaplans are insiders and he should not be allowed to use this concocted and conclusory claim to defeat this summary judgment motion.

Even if the Court were to consider the Kaplans as insiders and the Trustee could avoid the Kaplan Mortgage, it would not constitute a defense to the granting of summary judgment on this motion. Unlike the Dorf Mortgage, which the Trustee claims was invalid at the time it was made and thus invalid when the transfer occurred, if the Kaplan Mortgage were to be avoided, it would be avoided only when the Court enters an order to that effect and would at most constitute a claim against the Kaplans or give the Trustee a right to step into the shoes of the Mortgagee. At the time the transfer was made the Kaplan Mortgage was perfectly valid. Thus, at the time that Debtor transferred the Jupiter Property, the outstanding balance of the Kaplan Mortgage must be considered in the calculation of the value received by the Debtor. *See, e.g., In re Morris Communications, Inc.*, 914 F.2d 458, 466 (4th Cir. 1988)(in determining fair value, the "critical time is when the transfer is 'made.' Neither subsequent depreciation in nor appreciation in value of the consideration affects the ... question whether reasonable equivalent value was given"). In *Morris*, the court held that the fact that certain subsequent events made the property in question far more valuable did not affect the analysis because they had not come to pass at the time of the transfer. *Id.* at 469. Similarly, here, the fact that a subsequent

13

bankruptcy and proceeding in that matter could now avoid the Kaplan mortgage —

and in truth it could not — does not affect the analysis of the value at the time of

transfer.

The Jupiter Property that Debtor transferred to Muriel was heavily

mortgaged. When those mortgages are considered — even at discounted values —

they show that the Debtor received reasonably equivalent value and the transfer may

not be avoided.

B.    *The Property Was Transferred Not Only to Satisfy the Mortgage*
      *But Also to Begin Repaying the Money Debtor Embezzled.    Collectively*
      *Those Debts Far Exceeded the Property's Value.*

All of the parties to the transaction have testified that the transfer was

made not only to satisfy the mortgage debt of $476,820.00, but also, to the extent

there was any equity not covered by the mortgages being assumed, to begin to satisfy

Debtor's enormous obligations to Muriel from his embezzlement. Ord Aff., ¶ 4. *See*

*also* Alan Reisner Dep. at 40-41, 49. Even at Debtor's low-end admission that the

embezzlement debt was $755,000, this sum, along with the First Mortgage debt to

Muriel, far exceeded the value of the Jupiter Property. As such, even if the second and

third mortgages are entirely discounted, Debtor still received reasonably equivalent

value because he obtained, in return for the Jupiter Property, not only the elimination

of the $476,820 First Mortgage but also a reduction of his other debt to Muriel.[10]

---

[10]      In filing a proof of claim in this bankruptcy proceeding, Muriel did not reduce the amount
owed to reflect this transaction, because it is Muriel's belief that, after accounting for the two
additional mortgages, there was no equity left in the property to actually reduce the debt.
However, if this Court determines, in a subsequent proceeding, that neither mortgage has any
value, Muriel would reduce her proof of claim appropriately.

Accordingly, Debtor received reasonably equivalent value and the Trustee's claims must be dismissed.

<i>Conclusion</i>

For the reasons stated above, defendant requests that this Court issue an order (i) granting defendant summary judgment dismissing the claims in their entirety; and (ii) granting such other and further relief as to this Court appears just and proper.

Dated: New York, New York
      April 10, 2006

SCAROLA ELLIS LLP

By: _____
    Mark G. Peters (MP-9735)
    C. Michael Carlson*
888 Seventh Avenue
45th Floor
New York, NY 10106
(212) 757-0007

LEWIS W. SIEGEL
444 Madison Avenue
27th Floor
New York, NY 10022
(212) 481-1300

*  Not admitted to the Eastern District of New York