UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

ALAN H. REISNER
  & ELISA K. REISNER

Debtors.

MARC A. PERGAMENT,
Chapter 7 Trustee of the Estate
of Alan H. Reisner and
Elisa K. Reisner,

Plaintiff,

vs.

MURIEL C. REISNER

Defendant.

Chapter 7

Case No. 106-41184-608

Adv. No. 106-1256-608

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HER
### MOTION FOR SUMMARY JUDGMENT

SCAROLA ELLIS LLP
*Attorneys for Defendant*
  Mark G. Peters (MP-9735)
  Sara L. Mandelbaum (SM-6390)
888 Seventh Avenue
45th Floor
New York, NY 10106
(212) 757-0007

LEWIS W. SIEGEL
444 Madison Avenue
27th Floor
New York, NY 10022
(212) 481-1300

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

*Statement of Facts* ........................................................................................... 3

*Argument* ........................................................................................................ 3

POINT I    THE TRUSTEE HAS WITHDRAWN THE CLAIMS BASED ON ACTUAL
INTENT TO DEFRAUD AND THEREFORE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT SHOULD BE GRANTED AS TO
THOSE CLAIMS ....................................................................................... 3

POINT II   THE TRUSTEE FAILS TO RAISE ANY ISSUE OF FACT CHALLENGING
DEFENDANT'S SHOWING THAT THE DEBTOR RECEIVED
REASONBABLY EQUILAVLENT VALUE FOR THE PROPERTY
HE TRANSFERRED ................................................................................. 4

A.    *The Trustee Fails to Dispute That The Transfer of the Property Relieved
the Debtor of Three Mortgages Which, Even At a Discounted Value,
Roughly Equaled The Value of the Property.* .............................................. 5

    1.    *The Trustee Deliberately Mischaracterizes The Deposition Transcript
of Alan Reisner In Making His Specious Allegation That the
Debtor Made Payments on the $300,000 Mortgage Given To Muriel* ............ 6

    2.    *The Trustee Offers No Evidence to Demonstrate That the Kaplan
Mortgage Is Avoidable Or That the Debtor Did Not Receive
Reasonably Equivalent Value When He Recorded the Mortgage* .................. 8

        i.    *The Kaplan Mortgage Was Clearly Valid at the Time of
Transfer And Therefore Must Be Accounted For In
Calculating The Value of the Jupiter Property* ..................................... 8

        ii.    *Debtor's Recordation of the Kaplan Mortgage Constituted the Payment
of an Antecedent Debt And Therefore Was Not a Fraudulent
Conveyance* ....................................................................................... 9

        iii.   *The Uncontroverted Facts Show That The Kaplans
Were Not Insiders* ........................................................................... 11

    3.    *As Regards the Dorf Mortgage, the Trustee Offers No Evidence to
Dispute That, Even If Discounted Partially or Entirely By This Court,
Debtor Still Received Reasonably Equivalent Value* ................................ 16

B.      *It Remains Undisputed That, By Transferring the Property to Muriel, Even If the Mortgages Had Not Equaled the Value of the Property, The Debtor's Debt to Muriel Would Be Reduced By Any Difference.* ................................................17

*Conclusion* ...........................................................................................19

TABLE OF AUTHORITIES

**Cases**

*Applied Theory Corp.,*
   323 B.R. 838 (S.D.N.Y. Bkrtcy. 2005) ................................................................ 10

*Bowman v. Kingsland Development, Inc.,*
   432 So.2d 660 (5th Dist. Fla. 1983) ................................................................ 7

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S.Ct. 2548 (1986) ................................................................ 3

*In re Babcock,*
   70 B.R. 662 (Bkrtcy.  N.D. Ohio 1986) ................................................................ 12

*In re Castillo,*
   7 B.R. 135 (Bkrtcy., S.D.N.Y. 1980) ................................................................ 13

*In re Coffey v. Managed Properties, Inc.*
   85 F.2d 88 (2nd Cir. 1936) ................................................................ 9

*In re Coin Phones, Inc.,*
   153 BR 135 (Bkrtcy. S.D.N.Y. 1993) ................................................................ 13, 14

*In re Durkay,*
   9 B.R. 58 (N.D. Ohio 1981) ................................................................ 13

*In re Enterprise Partners, Inc.,*
   319 B.R. 626 (9th Cir.  BAP 2004) ................................................................ 16

*In re Friedman,*
   126 B.R. 63 (9th Cir. BAP 1991) ................................................................ 12, 13

*In re Kaplan v. Breslaw Ash, LLC,*
   264 B.R. 309 (Bkrtcy. S.D.N.Y. 2001) ................................................................ 10

*In re Rosen,*
   334 B.R. 257 (Bkrtcy. D Neb. 2005) ................................................................ 12

*In re Strickland,*
   230 B.R. 276 (E.D. Va. 1999) ................................................................ 12

*In re Tarricone,*
   286 B.R. 256 (Bkrtcy. S.D.N.Y. 2002) ................................................................ 15, 16

*In re Unglaub,*
   332 B.R. 303 (Bkrtcy. N.D. Ill. 2005) ............................................................ 10, 11

*Kulak v. City of New York,*
   88 F.3d 63 (2d Cir. 1996) ................................................................................ 3

*Pereira v. Dow Chem. Co,*
   301 B.R. 801  (Bkrtcy. S.D.N.Y. 2003) .......................................................... 10

## Other Authorities

Alan N. Resnick, Bankruptcy Law Manual
   sec. 8:34 (5th ed. 2005) ................................................................................ 10

## Rules

Fed. R. Civ P. 56 ............................................................................................... 3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

ALAN H. REISNER
   & ELISA K. REISNER

                       Debtors,

Chapter 7

Case No. 106-41184-608

MARC A. PERGAMENT,
Chapter 7 Trustee of the Estate
of Alan H. Reisner and
Elisa K. Reisner,

                       Plaintiff,

vs.

MURIEL C. REISNER

                       Defendant.

Adv. No. 106-12565-608

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Defendant Muriel Reisner ("Muriel"), submits this Reply Memorandum
in further support of her motion for summary judgment and in response to the
Trustee's Affirmation in Opposition to that motion ("Opp. Aff.").

### Preliminary Statement

The Trustee has failed to offer a single material fact contradicting
Muriel's case for summary judgment in this matter. His new arguments opposing
summary judgment have no more merit than the false allegations he recently
withdrew under threat of sanctions. Indeed, several of these new arguments are
based upon factual allegations every bit as unsupported as the earlier ones. For the

reasons set forth in Muriel's moving Memorandum in support of summary judgment ("Muriel's Mem."), as well as the reasons stated herein, this Court should now put an end to the Trustee's improper practices and grant Muriel's motion for summary judgment in its entirety.

The full scope of the Trustee's relentless campaign against a 91-year-old widow who has already had $1,500,000 embezzled from her by debtor Alan Reisner ("Debtor"), and who is the largest creditor of the estate the Trustee supposedly represents, will be set forth in Muriel's Memorandum in Opposition to the Trustee's Motion to Amend.[1] This campaign includes filing two adversarial proceedings against Muriel based upon claims so unfounded and reckless that, even in the largely protected role of a duly appointed trustee, this Trustee has been forced to withdraw the claims rather than face potential sanctions.  While the Trustee's vindictive behavior is not strictly relevant to the legal issues discussed below, it goes to the equities of allowing him what amounts to a third bite at the apple to continue attacking Muriel. After 14 months of discovery, the Trustee has no facts to suggest that the transaction in question was anything more than a wholly legitimate attempt by Muriel and her attorneys to recover some small part of the enormous debt owed to her by Debtor.  It is time this was acknowledged and the Trustee's actions against Muriel put to an end.

Finally, in opposing summary judgment, the Trustee frequently claims a need for discovery as an excuse for failing to cite any facts.  However, the Trustee has had over 14 months of discovery practice and has not unearthed any facts to undermine the transfer of the Jupiter Property.  Discovery is now closed and the Trustee has no entitlement to more time.

---

[1]    That Memorandum is scheduled to be filed in two days, on Wednesday, May 17, 2006.

*Statement of Facts*

The facts relevant to this matter are fully set forth in the Muriel's Mem.

Leah Kaplan, a defendant in the second adversary proceeding brought by the Trustee,

has now submitted a new affidavit in that matter (the "Second Kaplan Aff.").[2]  To the

extent those facts are relevant to this motion, they are noted in the argument below.

*Argument*

Summary judgment is mandated when "there is no genuine issue as to

any material fact and ... the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ P. 56 (c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S.Ct. 2548, 2552 (1986).  Where, as here, there has been extensive discovery

and the period for discovery is now closed, a party may not oppose summary

judgment by relying upon "conclusory statements, conjecture, or speculation."  *Kulak*

*v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  Yet that is precisely what the

Trustee has done in opposing Muriel's motion.

POINT I

THE TRUSTEE HAS WITHDRAWN THE CLAIMS BASED ON ACTUAL INTENT TO
DEFRAUD AND THEREFORE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE GRANTED AS TO THOSE CLAIMS

The Trustee, under threat of sanctions, has now withdrawn all claims

that a 91-year-old widow engaged in intentional fraud.  Letter of Trustee to the Court,

---

[2]    The Second Kaplan Aff. is attached to the Affidavit of Sara L. Mandelbaum, sworn to May 15, 2006 ("Mandelbaum Aff.") as Exhibit A.

3

dated May 5, 2006.[3]  Accordingly, Muriel is entitled to an order striking Claims 1, 3,

8 and 11.

## POINT II

### THE TRUSTEE FAILS TO RAISE ANY ISSUE OF FACT CHALLENGING DEFENDANT'S SHOWING THAT THE DEBTOR RECEIVED REASONABLY EQUIVALENT VALUE FOR THE PROPERTY HE TRANSFERRED

The Trustee's Opposition Affirmation raises no issue of fact on the

central point:  Whether the transfer of the property in question (the "Jupiter Property")

from Debtor to Muriel was an arms-length transaction for which the Debtor received

reasonably equivalent value.  The Trustee does not fundamentally dispute — nor can

he — that the Jupiter property was heavily encumbered by three mortgages *at the*

*time of transfer* and that Muriel, by taking possession of the property, relieved Debtor

of a mortgage debt totaling more than $985,920 on a property that had a stipulated

value of $900,000.  The Trustee's first attempt to discount one of the mortgages, the

Kaplan Mortgage, was so flawed that he withdrew it to avoid sanctions; his newly

invented arguments in this regard are no better.  (*See* Point A, below).

The Trustee also provides no facts to dispute that the transfer, in

addition to relieving Debtor of various mortgages, also relieved him, at least in some

measure, of his enormous embezzlement debt to Muriel if equity remained in the

property.  Rather, as explained below, the Trustee's Opposition Affirmation contains

either gross inaccuracies or simply ignores Muriel's arguments.  As such, Muriel's

motion for summary judgment should be granted on this basis as well.  (*See* Point B

below).

---

[3]     A copy of this letter is attached to the Mandelbaum Aff. as Exhibit B.

A.      *The Trustee Fails to Dispute That The Transfer of the Property Relieved the
        Debtor of Three Mortgages Which, Even At a Discounted Value, Roughly
        Equaled The Value of the Property.*

          The Trustee's arguments for discounting each of the three mortgages

on the Jupiter property are deeply flawed.  As to the first mortgage given to Muriel,

the Trustee suggests that the Debtor made payments on it and that, therefore, the

value of that mortgage should be reduced accordingly.  In making that argument, the

Trustee ignores the evidence to the contrary and, instead, cites to deposition testimony

which does not even remotely support his contention.  (*See* Point A.1. below).  As to

the Kaplan Mortgage, the Trustee attempts to raise new issues, now suggesting that

this mortgage is avoidable either as a preferential transfer or that the Debtor did not

receive reasonably equivalent value when he recorded it.  These arguments are also

without merit:  To begin with, even if this Court were to now find that the subsequent

bankruptcy filing cast doubt upon the mortgage, it was certainly valid at the time of

transfer and thus was of value to the Debtor.  Moreover, all of the facts before the

Court (as opposed to the Trustee's unsupported speculations), are that the Kaplan

mortgage was an arms-length transaction not an exchange between insiders, and that

the Debtor received exactly equivalent value in the form of the loan that the mortgage

secured.  (*See* Point A.2. below).  As to the Dorf Mortgage, while the Trustee would

have this Court simply discount it entirely, there is no dispute that it was, at the time of

transfer, and remains today, legally in force.  As such, some value, even if discounted,

must be attributed to that mortgage as well.  (See Point A.3. below).

          Muriel's mortgage and the Kaplan Mortgage were unassailable at the

time of the transfer and, alone, came to 77% of the value of the property —

reasonably equivalent value.  See Muriel's Mem. at pp. 11-12.  Whatever value this

Court assigns to the Dorf Mortgage only further bolsters this point.  As such, the

Debtor received reasonably equivalent value for the Jupiter Property and the Trustee's

claims to the contrary should be dismissed.


1.    *The Trustee Deliberately Mischaracterizes The Deposition Transcript of Alan Reisner In Making His Specious Allegation That the Debtor Made Payments on the $300,000 Mortgage Given To Muriel*

The Trustee now asserts, for the first time, that Alan Reisner testified at

his deposition the he was "current with the First Mortgage [to Muriel] until January

1999."  Opp. Aff. at ¶ 8, citing page 25 of Alan Reisner's deposition transcript

("Reisner Dep.").  Nowhere on page 25 of the Reisner Dep., or anywhere in the

record for that matter, did Debtor or anyone else so testify.  Rather, Debtor simply

notes that, in December 1998, Muriel afforded him "the privilege" of agreeing not to

collect the mortgage payments from him.  Nowhere does the Debtor state — nor is it

the case — that he had actually been making those payments prior to December

1998.  See Alan Reisner Dep. at 25.[4]  The relevant passage from the deposition is as

follows:

> Q:    That [the Dorf Mortgage] was in addition to the first mortgage to be paid to Muriel?
> A:    Yes, all though [sic] Muriel in December '98 had discussion that she was not collecting the other mortgages for her other two children; so she afforded me the same privilege.

---

[4]    Page 25 of the Alan Reisner Dep. is annexed as Exhibit C to the Mandelbaum Aff.

*Id.*[5] The uncontested evidence is that the Debtor never made any payments on the First Mortgage given to Muriel to secure repayment of that $300,000.00 loan. Affidavit of George Ord, sworn to April 7, 2006 ("Ord. Aff."), ¶ 2.

Moreover, in the complaint filed against Debtor in the Florida foreclosure proceeding, one of the allegations, which remained unchallenged by Debtor, was that Debtor had failed to make any of the mortgage payments due on the First Mortgage held by Muriel. See Mandelbaum Aff. Exhibit D (Amended Complaint filed in Palm Beach County, June 17, 2003). With respect to the First Mortgage, the Florida complaint stated in pertinent part: "Neither Alan H. Reisner or Elisa K. Reisner have made any payments on the note." *Id.* at ¶ 7. Although he had ample opportunity to do so, Debtor never contested this allegation and a Default was entered against him on September 8, 2003. Mandelbaum Aff. Exhibit E (copy of Default). Under Florida law, the entry of a default constitutes a binding admission upon the Debtor. *Bowman v. Kingsland Development, Inc.*, 432 So.2d 660 (5th Dist. Fla. 1983).

Thus, the Trustee's attempt to have this Court discount the value of the First Mortgage should be rejected; the amount due on the First Mortgage was $476,820.00 (the $300,000.00 First Mortgage plus accrued interest). Muriel presents substantive evidence in support of this point and there is no evidence to the contrary.

---

[5]    This deposition of the Debtor was taken by the Trustee. If the Trustee actually suspected that Alan was making payments, it was incumbent upon him to ask the pertinent question. Having failed to do that, he cannot be permitted to speculate about what the answer might have been had he asked the question, particularly in light of the evidence in the record to the contrary.

2.    *The Trustee Offers No Evidence to Demonstrate That the Kaplan Mortgage Is Avoidable Or That the Debtor Did Not Receive Reasonably Equivalent Value When He Recorded the Mortgage*

The Trustee argues that the Kaplan Mortgage is invalid and should not be considered in calculating the value Debtor received when he transferred the Jupiter Property to Muriel.  His original attack on the Kaplan Mortgage has been withdrawn in the face of sanctions.  The Trustee's new claims with respect to the Kaplan Mortgage are equally specious:[6] First, even if the Kaplan Mortgage were now found avoidable by this Court, it was completely valid and unchallengeable at the time Debtor transferred the Jupiter Property to Muriel and so must be accounted for in calculating the value Debtor received for the Jupiter Property.  (*See* Point (i) below).  Second, the Debtor received reasonably equivalent value because he received a loan for precisely the same amount as the amount of the mortgage.  The mortgage recording was on an antecedent debt and so not a fraudulent conveyance. (*See* Point (ii) below).  Third, as there is considerable evidence of an arms-length transaction and no testimony or documents to the contrary, the Kaplans are not insiders and the Kaplan Mortgage, recorded more than 90 days before the Debtor's bankruptcy, cannot be avoided as a preference. (*See* Point (iii) below).

(i)    *The Kaplan Mortgage Was Clearly Valid at the Time of Transfer And Therefore Must Be Accounted For In Calculating The Value of the Jupiter Property*

Ultimately, this Court does not even need to resolve, for this motion, whether the Kaplan Mortgage is valid.  Even if the Trustee were to succeed in obtaining a court

---

[6]    These new claims, made more than two years after the filing of the bankruptcy petition, may also be time barred.

order voiding the Kaplan Mortgage, which, as discussed below, he is not entitled to, this would not affect the value Debtor received for the Jupiter Property *at the time of its transfer*, which, for determining reasonably equivalent value, is the only relevant time period. Muriel's Mem. at 13-14. This is because the Kaplan Mortgage was clearly valid at the time of transfer; only the subsequent bankruptcy filing created a forum for the Trustee to challenge it. *Id.* The Trustee simply fails to respond to this point and for this reason alone, the Kaplan Mortgage must be considered in calculating the Jupiter Property's value.

　　　　(ii)　　*Debtor's Recordation of the Kaplan Mortgage Constituted the Payment of an Antecedent Debt And Therefore Was Not a Fraudulent Conveyance*

　　　　The Trustee argues that the Debtor's recordation of the Kaplan Mortgage on April 1, 2003, made it a fraudulent conveyance in which the Debtor did not receive reasonably equivalent value. Opp. Aff. at ¶ 10. This argument simply does not make sense. The mortgage given by Debtor was for the precise amount of the debt he owed the Kaplans. This is not only reasonably equivalent value: It is *exact* value.

　　　　The courts in this circuit are explicit: the payment of an antecedent debt, whether by transfer of funds or, as here, an interest in property by recording a mortgage, constitutes reasonably equivalent value such that there is no fraudulent transaction. This proposition has been so firmly established for decades in this and other jurisdictions as to be beyond serious question. *See e.g., In re Coffey v. Managed Properties, Inc.* 85 F.2d 88 (2nd Cir. 1936) (the debtor's granting of mortgage as security for an antecedent debt could not be attacked by trustee as a

fraudulent conveyance where property conveyed was comparable in value to the amount of antecedent debt); *In re Applied Theory Corp.*, 323 B.R. 838, 840 (Bkrtcy. S.D.N.Y. 2005) ("the security interest granted by debtor  provided the lenders nothing more "than the amount of money they had provided, and the debtor's liabilities did not increase due to the security interest; therefore, there can be no fraudulent conveyance); *Pereira v. Dow Chem. Co.,* 301 B.R. 80, 805-806 (Bkrtcy. S.D.N.Y. 2003) (holding that a preferential transfer that satisfied an antecedent debt could not be deemed a fraudulent conveyance because the antecedent debt satisfied the requirement of reasonably equivalent value); *In re Kaplan v. Breslaw Ash, LLC,* 264 B.R. 309, 326 (Bkrtcy. S.D.N.Y. 2001) (transfer not fraudulent where mortgage secured debtor's obligation on antecedent loan and the debtor receives value for delivery of property that secures the antecedent debt*).*   In *Pereira*, the Court stated:

> Past consideration is good consideration.  An antecedent debt satisfies the requirement of fair consideration and reasonably equivalent value, and . . . the payment of an existing liability is not fraudulent.  ...[I]f there is in our law one point which is more ungrudgingly accepted than others, it is that the preferential transfer does not constitute a fraudulent conveyance.

*Id.* at 805 (emphasis added).  See also, Alan N. Resnick, Bankruptcy Law Manual sec. 8:34 (5th ed. 2005) ("'Value' may consist of property or the satisfaction or securing of either a present or antecedent debt. Thus an insolvent debtor receives value by paying an old obligation.").

The Trustee — rather than address this basic bankruptcy rule of which he must surely be aware — instead relies upon a single case from Illinois, *In re Unglaub*, 332 B.R. 303 (Bkrtcy. N.D. Ill. 2005), apparently for the misleading proposition that if the recordation of a mortgage is not contemporaneous with its issuance, the recordation may be avoidable as a fraudulent conveyance.  *Unglaub* is

not applicable here.[7]  There, the Debtor's wife loaned him $300,000 for which he

executed a promissory note in her favor.  Unlike Alan Reisner in this proceeding, the

Debtor in *Unglaub* never made any payments on the promissory note.  *Id.* at 311.

While the *Unglaub* debtor gave his wife a junior mortgage and did not record it until

more than two years later, the court found that, in recording the mortgage when he

did, he intentionally sought to decrease the amount of his funds that would be

available to other creditors, and therefore engaged in actual intent to defraud those

creditors.  *Unglaub* at 319.

The facts in *Unglaub* — involving family members and intent to defraud — are

completely distinct from those here.  More important, even if *Unglaub* were

considered relevant here, it would be so out of step with established law of this Circuit

as to be entirely worthless as precedent.  The Trustee's reliance on *Unglaub* is

misplaced and should be rejected.[8]


(iii)    *The Uncontroverted Facts Show That*
        *The Kaplans Were Not Insiders*

Having withdrawn in the face of sanctions his false allegation that the

Kaplans were "closest friends" with the Debtor, the Trustee seeks to amend the

Complaint to create new arguments, also without any substance or investigation, that

the Kaplans are insiders.  He now argues that, by virtue of their professional

relationship to the Debtor, their alleged "knowledge" of the Debtor's financial

difficulties, and the alleged non arms-length nature of the transaction, the Kaplans

---

[7]    This is not surprising.  Such a proposition, if accepted by the courts, would potentially
invalidate thousands of mortgages and upset well-established rules of commerce.

[8]    The Trustee's citations to the case, and his failure to acknowledge on-point binding
authority within this circuit is improper and, indeed, violates professional standards of conduct.

were insiders. On this basis, the Trustee seeks to have the Kaplan Mortgage declared void as a preferential transfer.

Even if the Trustee is granted permission to amend his Complaint, his argument cannot be sustained. If permission to amend is denied, he is left with no argument. To begin with, even if the Trustee's new allegations — for which he offers no proof at this post-discovery stage of proceedings — were true, they would not support a finding that the Kaplans are insiders. The Trustee does not dispute that the Kaplans loaned Debtor funds in return for fixed monthly payments and a recorded mortgage to secure the loan. Second Kaplan Aff. at ¶ 5. The courts have long held that the mere fact that a transaction is between parties who have a history of business dealings or that the transaction does not observe all the formal niceties does not make it non-arms-length or an insider transaction; rather, "not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship." *In re Friedman,* 126 B.R. 63, 70 (9th Cir. BAP 1991) (despite defendant bank's president having been a close personal friend of debtor, solicited debtor's business, become debtor's primary lender, and taken at least one vacation with debtor, bank was not an insider). *See also, In re Rosen*, 334 B.R. 257, 262-263 (Bkrtcy. D Neb. 2005) (former friend and golf partner not insider because the transfer was commercially motivated and therefore not voidable as fraudulent); *In re Strickland*, 230 B.R. 276 (E.D. Va. 1999) (transferee was not an insider even though he later married debtor's mother whom he was dating at time of transfer; transferee did not control debtor); *In re Babcock*, 70 B.R. 662 (Bkrtcy. N.D. Ohio 1986)(former owner of corporate debtor whose relative had been retained as employee of debtor held not an insider); *In re Durkay,* 9 B.R. 58, 62-63 (N.D. Ohio

1981) (attorney who knew debtor for 25 years and made loan to him was not deemed to be an insider; mere showing that he served as debtor's attorney is not enough); *In re Castillo*, 7 B.R. 135, 137-138 (Bkrtcy., S.D.N.Y. 1980) (conveyance of real estate to mortagee creditor held not a voidable preference because trustee failed to allege any fact that would show any fraud).

In *In re Friedman, supra*, the Ninth Circuit rejected the trustee's attempt to claim that the debtor's real estate broker and friend was an insider for purposes of avoiding a transfer. The court found that the circumstances alleged by the trustee in *Friedman* in an attempt to show a special relationship, "do not necessarily give rise to an insider status *even though there was some degree of personal relationship with the debtor. It is unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control by the creditor over the debtor's business, would subject such creditor to insider status." In re Friedman*, 126 B.R. 63 at 70 (emphasis added). This Court should reach the same conclusion with respect to the business relationship between the Kaplans and the Debtor in this case.

Moreover, the Trustee's conclusory allegations as to the nature of the relationship between Debtor and the Kaplans — based upon conjecture and refuted by the Second Kaplan Affidavit — are plainly insufficient as a matter of law. *See*, *e.g.*, *In re Coin Phones, Inc.,* 153 BR 135 (Bkrtcy. S.D.N.Y. 1993). There, the Trustee sought to establish the insider status of a transferee whose employees held a significant portion of debtor's stock. In rejecting the trustee's claim that transfer was avoidable, the court found that the trustee's complaint contained conclusory allegations and did not allege a single fact regarding a special relationship or that the

transferee exerted control over the debtor. *Id.* at 141. As the court noted in *In re Coin Phones* with respect to the trustee's claim that the negotiation of a contract created a "special relationship" between the debtor and transferee, if every loan to a debtor by a business associate that lacked certain formalities could constitute an insider transaction, this "would subject such a large pool of individuals to preference actions that the term insider would be given an "absurd and illogical" meaning. *In re Coin Phones*, 153 B.R. at 141.

More important, there is absolutely no evidence to support even the Trustee's insufficient claims. The Second Kaplan Aff. unequivocally refutes the Trustee's argument that the Kaplans were insiders. First, neither of the Kaplans knew of Debtor's insolvency until the filing of this action, nor did Debtor indicate to them at any time that he was having any financial difficulty, apart from the need to restructure short-term debt into long-term debt. Second Kaplan Aff. at ¶¶ 2, 3, 4. The Kaplans were not social friends of Alan Reisner and would not have made the loan except for commercial reasons; and indeed, all of the terms of the agreement, including the monthly payments, were set out in writing. Second Kaplan Aff. at ¶¶ 4,5. They also received an interest rate of between 10% and 12%, a better rate of return than they had received on many of their investments. Kaplan Aff. at ¶¶ 4, 5. The Trustee fails to provide any facts to contradict these statements.[9]

_____

[9]    The Trustee refers to pages 22-23 of Alan Reisner's deposition in which the Trustee asked if David and Leah Kaplan knew that the Debtor was having "financial difficulty." The Debtor simply answered, "Yes." *See* Mandelbaum Aff., Exhibit C. Clearly, in order to convince the Kaplans to make him the loan in the first place, the Debtor sought to convince the Kaplans that he was in need, and in his letter to them (*See* Mandelbaum Aff. Exhibit B), he in fact stated that he had "a significant amount of short-term debt." In answering "yes" to the Trustee's question, the Debtor was presumably referring to this letter. The Second Kaplan Aff. makes clear that this short-term debt problem was the extent of the Kaplans' knowledge with regard to the Debtor's financial difficulties.

Further, the Kaplans fully expected that the mortgage would be recorded, that they would receive the appropriate documents, and that the Debtor would make payments on the mortgage, which he did.  Second Kaplan Aff. at ¶¶ 4, 5, 6.  Given their past business dealing with Debtor, and their understanding that he had a successful accounting practice, the Kaplans had no reason to doubt that they were making a worthwhile, financially advantageous investment, especially given that they were receiving monthly payments as required by the written agreement with Debtor.  Kaplan Aff. at ¶¶ 2, 6.  The Kaplans' repeated requests for documentary proof that the mortgage had been recorded were rebuffed by the Debtor with plausible explanations and their demand for documentation further shows that they regarded this as a business arrangement and not a deal among friends.  Second Kaplan Aff. at ¶ 7.

Without his baseless assertions that the Kaplans knew of Debtor's impending insolvency or that the loan was not arms-length, the Trustee is left essentially with no more than the professional relationship between the Debtor and the Kaplans.  The mere existence of a professional relationship, without more, however, is insufficient to confer insider status.  *See* pp. 12-13 above.  The Trustee cites no law suggesting otherwise.

*In re Tarricone*, 286 B.R. 256 (Bkrtcy. S.D.N.Y. 2002), relied upon by the Trustee, is totally inapposite to the facts of this case.  There, the court found insider status based upon a variety of factors, including:  1) the Debtor and lender were "close personal friends and golfing buddies" for many years; 2) the Debtor was the President of a public corporation that had lost millions of dollars at the time the loan was made; and 3) the loan was made to the Debtor at a "prime rate" when it was

publicly known that the Debtor was not creditworthy and could never have received such a rate from a commercial lender. *In re Tarricone,* 286 B.R. at 269, 271. In addition, unlike the Kaplans, who repeatedly sought to have their mortgage recorded and finally succeeded, the lender in *Tarricone* "at no time" sought to enforce the note. *Id.* at 272. The *Tarricone* Court concluded that "virtually everything about this loan was unusual, if not inexplicable." *Id.* at 271. Clearly, the loan at issue in *Tarricone* bears no resemblance to the Kaplan Mortgage.

In support of his argument, the Trustee also relies on *In re Enterprise Partners, Inc.,* 319 B.R. 626 (9th Cir. BAP 2004). That case simply articulates the uncontroversial proposition that a professional relationship may, with other factors present, be one basis for a finding of insider status. For such a finding, the relationship must "compel[ ] the conclusion that the individual or entity has a relationship with the debtor, *close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties*." *Id.* at 631 (emphasis added). The Trustee provides absolutely no facts to support such an affinity.

3. *As Regards the Dorf Mortgage, the Trustee Offers No Evidence to Dispute That, Even If Discounted Partially or Entirely By This Court, Debtor Still Received Reasonably Equivalent Value*

The Trustee speculates about the enforceability of the Dorf Mortgage but he does not contest, nor could he, that this mortgage remains in effect today; or that when Muriel took possession of the property she could not be certain that this mortgage could be avoided; or that the relevant time period for calculating reasonably equivalent value is the time of transfer. For these reasons, even if this

Court avoids the Dorf Mortgage, it must be credited with some value at the time of the transfer. Muriel's Mem. at 11. The Trustee does not address this point.

The Trustee also fails to address Muriel's point that, even if the Court were to discount the Dorf Mortgage by half — to account for the potential that it may, in the future, be invalidated — that would leave the value of the three mortgages at $838,420.00, or 93% of the value of the property, which satisfies the reasonably equivalent value requirement. *See* Muriel's Mem. at 11 and cases cited therein. Similarly, the Trustee ignores Muriel's argument that, even discounting the Dorf Mortgage entirely would leave the value of the three mortgages at $690,920, or 77% of the value of the property, which also constitutes reasonably equivalent value under the case law. *Id.*

By ignoring these facts, the Trustee effectively concedes them. Therefore, his argument that avoiding the Dorf Mortgage would lead to a finding of either lack of reasonably equivalent value or constructive fraud, should be rejected.


B.      *It Remains Undisputed That, By Transferring the Property to Muriel, Even If the Mortgages Had Not Equaled the Value of the Property, The Debtor's Debt to Muriel Would Be Reduced By Any Difference.*

Muriel has presented sworn testimony to demonstrate that Debtor, in return for the Jupiter Property, also received a reduction in his debt to Muriel in an amount equivalent to any equity in the property. Muriel's Mem. at 14. Because that debt exceeded $755,000, this guaranteed that the Debtor received reasonably equivalent value no matter in what amounts the mortgages are finally valued. The Trustee provides absolutely no admissible testimony or documents to contradict this. For this reason alone, summary judgment dismissing the Trustee's claims is required.

The Trustee raises two arguments in opposition to this point; both are baseless. First, he claims that Muriel, in responding to the Trustee's Requests to Admit, "denied that the Transfer [of the Jupiter Property] reduced the Debtor's liability for the embezzlement debt." Opp. Aff. at ¶ 7 (citing Request to Admit Response No. 6). Muriel's Response No. 6 says nothing of the sort, as the Trustee knows. It merely states that the transfer was not "in satisfaction" of Debtor's embezzlement debt. Mandelbaum Aff., Exhibit F (Request to Admit Response No. 6). This is true. "Satisfaction" of a debt means to pay it off so that it no longer exists. *Black's Law Dictionary* at 1024 ("a judgment is satisfied by the payment of the amount due…"). While Debtor's $1,500,000 debt may have been reduced by the transfer, that transfer certainly did not eliminate the debt. The Trustee's decision to describe the word "satisfaction" as "reduction" in his papers is simply dishonest.

The Trustee's second objection is his supposed "evidence" that Muriel filed a proof of claim for the full amount of the embezzlement debt. However, at the time the proof of claim was filed, Muriel believed that the various mortgages — even with the Dorf Mortgage somewhat discounted — were more than $900,000, thus leaving no equity to reduce the debt. The fact that Muriel reasonably believed that no equity was left in the Jupiter Property does not dispute the underlying offer to reduce the debt or Muriel's subsequent statement that if equity is found to exist, her proof of claim will be reduced accordingly. Because it must now be assumed that the offer was part of the transaction, it serves to provide the Debtor with reasonably equivalent value.

*Conclusion*

For the reasons stated above, defendant requests that this Court issue an order (i) granting defendant summary judgment dismissing the claims in their entirety; and (ii) granting such other and further relief as to this Court appears just and proper.

Dated:    New York, New York
          May 15, 2006

                                        SCAROLA ELLIS LLP


                                        By: *Mark G. Peters* /s/m
                                           Mark G. Peters (MP-9735)
                                           Sara L. Mandelbaum (SM-6390)
                                        888 Seventh Avenue
                                        45th Floor
                                        New York, NY 10106
                                        (212) 757-0007

                                        LEWIS W. SIEGEL
                                        444 Madison Avenue
                                        27th Floor
                                        New York, NY  10022
                                        (212) 481-1300