UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

ALAN H. REISNER and
ELISA K. REISNER,

          Debtors.

Chapter 7
Case No. 06-41184-608

------------------------------------------------------------x
MARC A. PERGAMENT, Chapter 7 Trustee
of the Estate of Alan H. Reisner and
Elisa K. Reisner,

          Plaintiff,

-against-

MURIEL C. REISNER,

          Defendant.

Adv. Pro. No. 06-1256-608

------------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Marc A. Pergament, Esq. | Mark G. Peters, Esq. |
| Marc J. Weingard, Esq. | Sara L. Mandelbaum, Esq. |
| Weinberg, Gross & Pergament LLP | Scarola Ellis LLP |
| 400 Garden City Plaza | 888 Seventh Avenue, 45th Floor |
| Garden City, New York 11530 | New York, New York 10106 |
| Attorneys for Plaintiff Marc A. Pergament | Co-Counsel for Defendant Muriel C. Reisner |

Lewis W. Siegel, Esq.
444 Madison Avenue
New York, New York 10022
Co-Counsel for Defendant Muriel C. Reisner

CARLA E. CRAIG
United States Bankruptcy Judge

1

This matter comes before the Court on the motion of Defendant Muriel C. Reisner ("Mrs. Reisner") seeking summary judgment dismissing this adversary proceeding, which was commenced on January 5, 2005 by Marc A. Pergament (the "Trustee"), the Chapter 7 trustee of the estate of Alan H. Reisner ("Alan") and Elisa K. Reisner ("Elisa") (collectively the "Debtors"). The Trustee opposed Mrs. Reisner's summary judgment motion. The Court heard testimony from Mr. George Ord, Mrs. Reisner's former attorney, and Alan. For the reasons set forth below, Mrs. Reisner's motion for summary judgment is denied, except as to the claims asserted by the Trustee under the New York Debtor and Creditor Law.

## Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334 and 157 and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

## Facts

The following facts are undisputed.

In April 1995, Mrs. Reisner loaned $300,000.00 to the Debtors to enable them to purchase, as tenants by the entireties, real property located at 6460 Sargasso Way, Jupiter, Florida (the "Property"), for $428,295.00. The Debtors gave Mrs. Reisner a first mortgage on the Property, which was recorded in May 1995 (the "Reisner Mortgage"). Mrs. Reisner is the widow of Alan's father.

After the Reisner Mortgage was recorded, Alan embezzled approximately $1.5 million from Mrs. Reisner over the course of several years. After the embezzlement came to light, Mrs.

Reisner commenced an action to foreclose the Reisner Mortgage on the basis of nonpayment and to recover the embezzled funds. In September 2003, the Debtors deeded the Property, which was worth $900,000.00, to Mrs. Reisner. Mrs. Reisner recorded the deed.

At the time of the transfer, the Property was also encumbered by two other mortgages, one (the "Dorf Mortgage") held by the Yetta Dorf Trust and the Saul Dorf Trust (the "Dorf Trusts") in the amount of $300,000.00, and the other (the "Kaplan Mortgage") held by David and Leah Kaplan (the "Kaplans") in the amount of $239,773.55. At the time of the transfer, $295,000.00 was owed on the Dorf Mortgage and $214,100.00 was owed on the Kaplan Mortgage. (Def.'s Mem. Supp. Summ. J. at 5.)

On March 16, 2004, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On November 17, 2004 a default judgment was entered against Alan declaring his embezzlement debt to Mrs. Reisner in the amount of $1,569,063.00 nondischargeable.

The Trustee commenced this adversary proceeding in 2005 to avoid the transfer of the Property to Mrs. Reisner and recover it for the estate. The complaint initially alleged that the transfer to Mrs. Reisner was an intentional and constructive fraudulent transfer but the Trustee subsequently withdrew the intentional fraudulent transfer claims against Mrs. Reisner. The Trustee also commenced a separate adversary proceeding against the Dorf Trusts, claiming that the Dorf Mortgage is void *ab initio* under Florida law, and against the Kaplans, seeking to avoid the Kaplan Mortgage as a preferential transfer.

## Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citation omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)(citation omitted). "The non-moving party must show that there is more than a metaphysical doubt regarding the material fact and my not rely solely on self-serving conclusory statements." In re Jarrell, 251 B.R. 448, 450-451 (Bankr. S.D.N.Y. 2000).

## Discussion

The Trustee argues that the Debtors did not receive reasonably equivalent value in exchange for the deed to the Property because Mrs. Reisner obtained the Debtors' equity in the Property for no consideration. Mrs. Reisner asserts that the Debtors received reasonably

equivalent value in exchange for the Property because it was deeded in lieu of foreclosure and was fully encumbered and, accordingly, there was no equity in the Property. Mrs. Reisner further asserts that, even if the Debtors did have equity in the Property, the Debtors received reasonably equivalent value for that interest because of an agreement between herself and Alan whereby she would reduce the embezzlement debt by the amount of equity in the Property, if any, after sale of the Property and satisfaction of all valid mortgages. The Trustee contends that the parol evidence rule bars Mrs. Reisner from arguing that a contract existed. The Trustee also argues that no such contract existed, and that if it did, it is not enforceable due to Florida's Statute of Frauds.

A.      11 U.S.C. § 548(a)(1)(B).

Section 548(a)(1)(B) of the Bankruptcy Code provides that a trustee can avoid a transfer of a debtor's interest in property when the transfer was made within one year before the bankruptcy filing and conveyed the debtor's interest in property in exchange for less than "a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B)(i).[1] To be avoidable, the transfer must have occurred when the debtor was insolvent or was rendered insolvent as a result of the transfer; "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital"; or intended to incur, or believed that he would incur, debts beyond his ability to pay them as they matured. 11 U.S.C. § 548(a)(1)(B)(ii). "The time at which 'reasonably equivalent value' is determined is the time of the transaction." Krommenhoek v. Natural Resources Recovery, Inc. (In re Treasure Valley Opportunities), 166 B.R. 701, 704 (Bankr. D. Idaho 1994). The purpose of Section 548

---

[1] Since the Debtors filed their bankruptcy petition in 2004, Section 548 of the Bankruptcy Code as it was codified prior to the Bankruptcy Abuse Prevention and Consumer Protection Act applies. See Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez), 342 B.R. 165, 168, n. 1 (Bankr. S.D.N.Y. 2006).

"is to recover for the estate assets that could be distributed to unsecured creditors . . . ." Brasby v. Joseph C. Perry, Inc. (In re Brasby), 109 B.R. 113, 121 (Bankr. E.D. Pa. 1990).

    1.     Reasonably Equivalent Value.

For purposes of Section 548, "value" is defined as "property, or satisfaction or securing of a present or antecedent debtor of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2). The determination of whether the debtor received reasonably equivalent value for his interest "requires the court to compare what was given with what was received." Coan v. Fleet Credit Card Servs., Inc. (In re Guerrera), 225 B.R. 32, 36 (Bankr. D. Conn. 1998). "[I]t is not necessary that there be 'mathematical precision' or a 'penny-for-penny' exchange in order to establish reasonably equivalent value." Id. The court must determine whether reasonably equivalent value was exchanged based on the facts and circumstances of each case. See Davis v. Suderov (In re Davis), 148 B.R. 165, 175 (Bankr. E.D.N.Y. 1992), aff'd. 169 B.R. 285 (E.D.N.Y. 1994)(citing In re Pruitt, 72 B.R. 436 (Bankr. E.D.N.Y. 1987) and In re Adwar, 55 B.R. 111 (Bankr. E.D.N.Y. 1985)). "Relevant considerations include the fair market value of the property at the time of the transfer, the nature of the property, and its relative marketability. . . " Davis, 169 B.R. at 299.

    a.     Deed In Lieu of Foreclosure.

To determine whether the Debtors received reasonably equivalent value in exchange for the deed in lieu of foreclosure, the Court must determine how much equity, if any, the Debtors had in the Property at the time of the transfer. Mrs. Reisner asserts that the Debtors never made any payments on the Reisner Mortgage and owed $476,820.00, including interest, at the time of

6

the transfer. Approximately $295,000.00 was owed on the Dorf Mortgage and $214,100.00 was owed on the Kaplan Mortgage at the time of the transfer as well. (Def. Mem. Supp. Summ. J. at 5.) The Trustee relies on Alan's deposition testimony and contends that the Debtors made payments until January 1999 and that only $358,576.00 was owed on the Mrs. Reisner Mortgage, giving the Debtors at least $32,324.00 in equity. At the hearing, Alan testified that payments were made on the Reisner Mortgage through December 1998. (Tr.$^2$ at 43.) No documentary evidence was presented by either side to support their contentions or otherwise to establish the amount owed on the Reisner Mortgage.

The Trustee asserts that the Debtors' equity in the Property was substantially more than $32,324.00 because, according to the Trustee, the Dorf Mortgage is void by operation of Florida law. The Trustee argues that the Dorf Mortgage is invalid because Alan, without Elisa, signed the mortgage note conveying the mortgage to the Dorf Trusts. Mrs. Reisner takes no position on the validity of the Dorf Mortgage. (Def.'s Pre-Trial Hearing Mem. Supp. Summ. J., at 9; Tr. at 20-21.)

According to Florida law, "a husband and wife owning property in an estate by the entireties must join in any conveyance thereof [and] neither spouse can sell, forfeit or encumber any part of the estate without the consent of the other . . . ." Parrish v. Swearington, 379 So. 2d 185, 185-186 (Fla. Ct. App. 1980). However, Florida law requires the consent of the other spouse, not the spouse's signature. See id. at 186. Consent may be inferred from the conduct of the other spouse. See id. (court could not find consent of the non-signatory spouse in the absence of evidence of the spouse being "a party to, participating in, or [knowing] of the conveyance of

---

$^2$"Tr." refers to the transcript of the hearing held on July 21, 2006.

the property held in the entireties."); See also Fla. Jur. Family Law §411 ("Consent will be inferred where a spouse is aware of the conveyance but fails to object.").

Alan testified that Elisa did not know of the existence of the Dorf Mortgage. (Tr. at 43.) Although his testimony on this point is hearsay and may not be sufficient to find that the Dorf Mortgage is void, this record is certainly insufficient to support the conclusion that the Dorf Mortgage is valid.

On this record, therefore, it is impossible for this Court to conclude that the Debtors had no equity in the Property at the time of the transfer above the amounts of the valid mortgages on the Property, and to grant summary judgment on that basis. Because the record is insufficient to determine the amount owed on the Reisner Mortgage, or to find that the Dorf Mortgage is valid, it is impossible to conclude on this record that the release of the Debtors under the Reisner Mortgage constituted reasonably equivalent value for the deed to the Property.

b. Agreement Between Alan and Mrs. Reisner.

Mrs. Reisner argues that the Debtors received reasonably equivalent value in exchange for the Property even if the release of the Debtors' liability under the Reisner Mortgage by itself was insufficient consideration for the transfer. Mrs. Reisner asserts that through her attorney, George Ord, she agreed with Alan that the embezzlement debt would be reduced by the amount of equity in the Property, if any, remaining after the sale of the Property and the satisfaction of all valid mortgages, and that this agreement constituted additional consideration for the transfer of the Property. The Trustee contends that the parol evidence rule bars Mrs. Reisner from claiming that any such agreement existed because it contradicts the terms of the deed. The Trustee also argues that no such agreement existed, and that even if one did, it would be unenforceable under

Florida's Statue of Frauds. Mrs. Reisner argues that the Statute of Frauds and the parol evidence rule are inapplicable.

Given that the agreement provided for the equity in a Florida home to be applied towards satisfying a Florida state court judgment, the law of that state governs whether an agreement was formed between Mrs. Reisner and Alan, and if so, whether it is enforceable. Florida law recognizes the parol evidence rule, which provides that "evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract." Johnson Enters. of Jacksonville v. FPL Group, Inc., 162 F.3d 1290, 1309 (11th Cir. 1998); See also Ungerlieder v. Gordon, 214 F.3d 1279, 1282 (11th Cir. 2000). However, "[t]he parol evidence rule does not preclude the introduction of evidence showing a prior or contemporaneous agreement if the writing . . . constitute[s] only a partial integration of the agreement between the parties." Matthews v. Drew Chem. Corp., 475 F.2d 146, 149 (5th Cir. 1973)(quoting Walley v. Bay Petroleum Corp., 312 F.2d 540, 543-544 (5th Cir. 1963)). If it can be inferred that the writing is only partially integrated or that the parties did not intend for the writing to be completely integrated, parol evidence is admissible. Id. However, parol evidence, if admissible, may not "alter the terms of or add *inconsistent* provisions to a written contract." Id. The collateral agreement being proven by parol evidence "must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it." Id.

Here, the deed states that the Property was transferred to Mrs. Reisner for "ten dollars and other good and valuable consideration." The deed goes on to describe the "other . . . consideration":

> This deed is intended as an absolute conveyance of the subject
> property in consideration of the release of the personal liability of
> the [Alan and Elisa] under that certain mortgage given by [Alan
> and Elisa] to [Mrs. Reisner] on April 28, 1995, and recorded on
> May 8, 1995 . . .

Alan and Mr. Ord both testified that the deed was not meant to be a full integration of their agreement. (Tr. at 34, 48-50.) Mr. Ord explained that the language quoted above was included in the deed because he was concerned "that if Alan and Elisa had executed a deed that might be an argument that the mortgage which they gave merged into the deed, which would then preclude that mortgage being foreclosed and the wiping out of the inferior liens . . . ." (Tr. at 37-38.)

Nevertheless, the conclusion is inescapable that the parol evidence rule precludes the introduction of the evidence proffered by Mrs. Reisner. The collateral agreement that Mrs. Reisner seek to prove not only contradicts the consideration recited in the deed, it is also "closely connected with the principal transaction" of transferring the deed release the Debtors from liability under the Reisner Mortgage. The collateral agreement between Alan and Mrs. Reisner, if it existed, did not "relate to a subject distinct from that to which the written contract applies". See Matthews, 475 F.2d at 149. The deed conveyed the entire Property, including any equity. Parol evidence cannot be relied upon to prove a collateral agreement between Alan and Mrs. Reisner relating to a promise to apply any equity that might be realized from a sale of the Property to reduce the embezzlement debt.

Even if the Court considers the evidence proffered by Mrs. Reisner of the alleged collateral agreement, the evidence presented is insufficient to establish that the Debtors received reasonably equivalent value for the transfer of the Property. Florida law defines an agreement as

"a manifestation of mutual assent by two or more legally competent parties to each other." <u>TLZ Props. v. Kilburn-Young Asset Mgmt. Corp.</u>, 937 F. Supp. 1573, 1578 (M.D. Fla. 1996)(citing 11 Fla. Jur. 2d Contracts § 1(1979)).  The parties must each "assent to a certain and definite proposition" and "must have a definite and distinct understanding, common to both, and without doubt or difference . . ." <u>Id.</u> (internal quotations omitted).  There must be a meeting of the minds as to essential terms and conditions of the contract.  <u>Leopold v. Kimball Hill Homes Fla., Inc.</u>, 842 So. 2d 133, 136 (Fla. Ct. App. 2003).

Both Alan and Mr. Ord testified that there were conversations between them where Mr. Ord acted as Mrs. Reisner's attorney and agent.  Mr. Ord testified that he suggested to Alan that

> . . . it would be a good idea for him and his wife to deed over the [Property] and whatever equity would be in the [Property] to [Mrs. Reisner], and then [Mrs. Reisner] would . . . do what she could with regard to cleaning up the title . . . and to the extent that there was value there beyond what he owed [Mrs. Reisner] on the mortgage, that would constitute partial repayment of the money he had embezzled from her.

(Tr. at 18.)

Alan testified that it was his understanding that if Mrs. Reisner "sells it or values it, whatever she does with my other mortgage holders, that she would keep that money, and that it would go against the [embezzlement] debt."  (Tr. at 49.)  Alan testified that he transferred the Property to Mrs. Reisner "in part on the belief that if there was equity left over it would begin to pay down [the embezzlement] debt."  (Tr. at 50.)

Whether or not this testimony establishes the existence of an agreement between Alan and Mrs. Reisner, such an agreement would not provide reasonably equivalent value to either of the Debtors for any equity that may have existed in the Property.

In order to determine whether Mrs. Reisner's promise to apply the equity in the Property toward the embezzlement debt constitutes reasonably equivalent value under Section 548, it is necessary to ask whether reasonably equivalent value is received when an unperformed promise is made to reduce a debtor's debt at some future point in time. "The language of Section 548(d)(2)(A), seeming to contemplate only a present advance, or transfer of property as security for, or the discharge of, an antecedent debt, generally leaves no room for a mere executory promise to constitute value." 5 Collier on Bankruptcy, ¶ 548.05[1][b] at 548-39 (2006); See also 9C Am. Jur. 2d. Bankruptcy § 2056 (2006) ("The language of 11 U.S.C.A. § 548(d)(2) providing that 'value does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor' has been cited in support of the general proposition that value, for fraudulent transfer purposes, excludes executory promises of future consideration."). There is, however, no controlling law in the Second Circuit on this issue.

Courts in other jurisdictions have held that future consideration is not reasonably equivalent value. See, e.g., Wootton v. Ravkind (In re Dixon), 143 B.R. 671 (Bankr. N.D. Texas 1992) (promise by attorney to provide legal representation in a prospective criminal proceeding does not constitute reasonably equivalent value for fee); Bailey v. Metzger, Shadyac & Schwarz (In re Butcher), 72 B.R. 447 (Bankr. E.D. Tenn. 1987)(attorney's promise to perform future legal services on behalf of the debtor's family is not reasonably equivalent value for fee). "However, there is contrasting authority holding that . . . promises of future performance may constitute value, especially if what is promised will inure to the benefit of creditors." 9C Am. Jur. 2d Bankruptcy § 2056; See also Prevue Prods., Inc. v. Morton Shoe Cos. (In re Morton Shoe

12

Cos.), 24 B.R. 1003 (Bankr. D. Mass 1982) (future promise of royalties was reasonably equivalent value).

The only Second Circuit case relating to this issue is Harper v. Lloyd's Factors, Inc., 214 F.2d 662 (2d Cir. 1954). There, the debtor was a manufacturer of furs. Lloyd's Factors, Inc. ("Lloyd's"), the defendant, was a factor in the business of purchasing notes and accounts receivable. Id. at 662-663. The debtor obtained approximately $27,000.00 worth of furs from a fur dealer. Id. Because the fur dealer was unwilling to sell the furs to the debtor on credit, the debtor contracted with Lloyd's to purchase the debtor's $10,000 note from the fur dealer with funds provided by the debtor. Id. Under the arrangement, Lloyd's would then return the $10,000 note to the debtor. Id. at 663. "The purpose of this arrangement . . . was to enable [the debtor] to obtain the benefit of the discount on the price of the furs for which the notes were given . . . ." Id. In the end, the debtor received furs worth $27,000.00 for less than $10,000.00. Id. The trustee argued that the debtor had given Lloyd's $10,000.00 in exchange for a promise to return the purchased notes to him, and that such transfer was a fraudulent conveyance. Id. However, the court found that "fair consideration" under Section 67(d)(1)(e) of the Bankruptcy Act was given in exchange for the $10,000.00 because "the entire contract was carried out as agreed upon and the promise was executed by delivery of the notes back to the [debtor]." Id. Furthermore, the promise had been performed within five days from when it was given and "substantially before the bankruptcy." Id.

Here, there was no such performance. According to Mrs. Reisner, the Debtors' equity in the Property was transferred to Mrs. Reisner in exchange for a promise that Alan's embezzlement debt to her would be reduced. However, there was no agreement on the precise amount by which

the embezzlement debt would be reduced or when this reduction of the debt, if any, would take place. Alan testified that he understood that "if [Mrs. Reisner] held it long enough," she might realize some proceeds to be applied to reduce the embezzlement debt. (Tr. at 49.) Mr. Ord testified that Mrs. Reisner was going to seek to have the Dorf Mortgage invalidated and buy the Kaplan Mortgage at a discount to try and increase the equity in the Property, which he estimated would take 11 months. (Tr. at 21.)  No such action was ever taken by Mrs. Reisner, and although Mr. Ord stated that this was her intention, neither Alan nor Mr. Ord testified that there was any actual agreement on any deadline or time frame for her to do so. Nor was there any agreement as to the manner in which the equity in the Property would be realized. Furthermore, there is no indication from the testimony that there was any agreement that Mrs. Reisner would pay the Kaplan Mortgage in order to preserve any equity in the Property until such time as she elected to realized on that equity. If the Debtors had equity in the Property at the time of the transfer, and if the Property's value declined by the time Mrs. Reisner decided to realize on the equity in the Property, or the amount owed on the Kaplan Mortgage increased substantially, the Debtors could potentially receive no reduction of Alan's debt in exchange for their equity. Whether or not an executory promise can ever constitute reasonably equivalent value, the testimony here does not establish the existence of any agreement that would qualify as such.

B.   11 U.S.C. § 544.

Section 544(b) of the Bankruptcy Code authorizes the trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable [nonbankruptcy] law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b).

1.     Florida Uniform Fraudulent Transfer Act.

The Trustee asserts that the transfer of the Property to Mrs. Reisner is avoidable as a constructive fraudulent transfer under Section 726.103 et seq. of the Florida Uniform Fraudulent Transfer Act.

The analysis under Florida law of whether reasonably equivalent value was given is identical to that under Section 548 of the Bankruptcy Code.  See Kapila v. WLN Family Ltd. P'ship (In re Leneve), 341 B.R. 53, 56, n.1 (Bankr. S.D. Fla 2006)("The [Florida] fraudulent transfer provisions are essentially identical to those found in the Bankruptcy Code . . . ."); Official Comm. of Unsecured Creditors v. Fla. (In re Tower Envtl., Inc.), 260 B.R. 213, 222 (Bankr. M.D. Fla. 1998)(" . . . Florida Statute § 726.105(1)(b) and Florida Statute § 726.106(1) are analogous in form and substance to § 548(a)(2) of the Bankruptcy Code.")(internal quotations omitted).  Therefore, for all the reasons set forth above, Mrs. Reisner's motion for summary judgment dismissing the Trustee's claims under the Florida Uniform Fraudulent Transfer Act is denied.

2.     New York Debtor and Creditor Law.

The Trustee seeks to recover the Property under Section 270 et seq. of the New York Debtor and Creditor Law.  The Trustee can only assert his strong arm powers "using the substantive law of the state in which the property in question is located . . . ."  Midlantic Bank v. Bridge (In re Bridge), 18 F.3d 195, 200 (3d Cir. 1994).  Since the Property is located in Florida, the Trustee cannot assert New York fraudulent transfer claims using his strong arm powers under Section 544 of the Bankruptcy Code.  Mrs. Reisner's motion for summary judgment dismissing the Trustee's claims under the New York Debtor and Creditor Law is therefore granted.

15

## Conclusion

For the reasons set forth above, Mrs. Reisner's motion for summary judgment is denied, except to the limited extent set forth herein. A separate order will issue.

Dated: Brooklyn, New York
November 21, 2006

                                         \s\*Carla E. Craig*
                                               CARLA E. CRAIG
                                      United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

ALAN H. REISNER and
ELISA K. REISNER,

Chapter 7
Case No. 06-41184-608

                                      Debtors.
-----------------------------------------------------------x
MARC A. PERGAMENT, Chapter 7 Trustee
of the Estate of Alan H. Reisner and
Elisa K. Reisner,

Adv. Pro. No. 06-1256-608

                                      Plaintiff,
-against-

MURIEL C. REISNER,

                                      Defendant.
-----------------------------------------------------------x

## MAILING CERTIFICATE

      I, Sharon L. Weiss, hereby affirm that on November 21, 2006 a copy of a Decision and an Order were delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

Marc A. Pergament, Esq.
Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530

Marc J. Weingard, Esq.
Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530

Matt Brown, Esq.
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530

Ira Levine, Esq.
320 Northern Boulevard, Suite 14
Great Neck, New York 11201

Mark G. Peters, Esq.
Scarola Ellis LLP
888 Seventh Avenue, 45th Floor
New York, New York 10106

Sara Mandelbaum, Esq.
Scarola Ellis LLP
888 Seventh Avenue, 45th Floor
New York, New York 10106

Lewis W. Siegel, Esq.
444 Madison Avenue, 27th Floor
New York, New York 10022

O. Andrew F. Wilson, Esq.
Emery Celli Brinckerhoff & Abady LLP
545 Madison Avenue
3rd Floor
New York, NY 10022

Dated: Brooklyn, NY
       November 21, 2006

                                            */s/Sharon L. Weiss*
                                                     Sharon L. Weiss